FILED

2023 Apr-12  PM 12:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LAWRENCE FLUTE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:19-CV-02008-MHH** |
| | ) | |
| **STATE OF ALABAMA BOARD** | ) | |
| **OF PARDONS AND PAROLES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

In this employment discrimination action, plaintiff Lawrence Flute, a Black male, asserts claims for race and sex-based discrimination and retaliation against his employer, the Alabama Board of Pardons and Paroles. The Board contends that Mr. Flute's workplace misconduct caused him to be passed over for a promotion and a raise. Mr. Flute argues that the Board's finding that he violated personnel rules is in error, and he contends that the Board improperly promoted one of his less experienced co-employees. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Board has asked the Court to enter judgment in its favor on Mr. Flute's claims. (Doc. 43). This opinion resolves the Board's motion for summary judgment.

The opinion begins with a discussion of the standard that a district court employs to evaluate motions for summary judgment. Then, consistent with the

summary judgment standard, the Court identifies the evidence that the parties have submitted, describing the evidence in the light most favorable to Mr. Flute. Finally, the Court evaluates the evidence using the legal principles that govern Mr. Flute's discrimination and retaliation claims.

## I.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that a genuine dispute as to a material fact precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020). Accordingly, the Court views the evidence in the light most favorable to Mr. Flute and draws all reasonable inferences from the

evidence in his favor.

## II.

The Alabama Board of Pardons and Paroles hired Mr. Flute as a probation officer in March of 2006.  (Doc. 44-2, p. 2).  Mr. Flute worked in the Board's Birmingham office.  (Doc. 44-1, p. 8, tpp. 21–22).  In 2017, Kristi McKay-Smith, Mr. Flute's supervisor, began investigating Mr. Flute after the Board received a complaint about him from Daniel Bailey, an individual on probation.  (Doc. 44-14, p. 4, ¶¶ 9–10; Doc. 44-14, pp. 22–26).  According to Mr. Bailey, Mr. Flute signed his (Mr. Bailey's) name on two checks without permission and fraternized with his (Mr. Bailey's) wife.  (Doc. 44-14, pp. 4–5, ¶ 11; Doc. 44-14, pp. 22–26).

Mr. Flute first met Mr. Bailey at a McDonald's restaurant.  Mr. Flute noticed that Mr. Bailey was wearing a shirt with a roofing company logo on it, and Mr. Flute approached Mr. Bailey to ask about the company because Mr. Flute's roof needed repair.  (Doc. 44-1, pp. 65–66, tpp. 253–55).  A short time later, in February 2017, Mr. Flute hired Mr. Bailey's roofing company.  (Doc. 44-1, p. 67, tpp. 259–60).  When Mr. Flute hired Mr. Bailey, Mr. Flute did not know that Mr. Bailey was on probation. (Doc. 44-1, p. 76, tp. 294).  Mr. Bailey was supervised out of the Board's Columbiana office in Shelby County, not out of the Birmingham office in Jefferson County where Mr. Flute worked.  (Doc. 44-4, pp. 52–53; Doc. 48, p. 1, ¶ 4).[1]

---

[1] In a document titled "Plaintiff's Position," Mr. Flute asserted that Mr. Bailey told him that he

Case 2:19-cv-02008-MHH   Document 58   Filed 04/12/23   Page 4 of 20

In May of 2017, Mr. Bailey was arrested.  Mr. Flute fired Mr. Bailey after discovering Mr. Bailey's arrest and probation status.  (Doc. 44-1, pp. 60–61, tpp. 232–37; Doc. 44-1, p. 71, tpp. 274–76).

Ms. McKay-Smith's initial investigation into Mr. Flute's relationship with Mr. Bailey led her to believe that Mr. Flute had violated the Board's policies and "engaged in conduct unbecoming of a state employee," in part because Mr. Flute entered a contract with Mr. Bailey for roof repairs while Mr. Flute was supervising Mr. Bailley's stepson who was on probation.  (Doc. 44-14, p. 7, ¶¶ 24–25).  In July of 2017, Ms. McKay-Smith forwarded her findings and a recommendation for disciplinary action against Mr. Flute to her direct supervisor, Stacey Brown, (Doc. 44-14, p. 4, 7, ¶¶ 9, 25), and Ms. Brown forwarded the investigation report to her supervisor, Darrell Morgan, (Doc. 44-5, p. 4, ¶ 12).  In October of 2017, Ms. McKay-Smith received a request for additional information, so she continued her investigation and supplemented her report.  (Doc. 44-14, p. 8, ¶¶ 27-29).

In March of 2018, Mr. Flute asked Ms. McKay-Smith for a letter concerning the investigation to provide to his mortgage company.  (Doc. 44-14, p. 8, ¶ 30).

---

(Mr. Bailey) was not on probation but that he still owed Shelby County money.  (Doc. 48, p. 2, ¶ 7).  The Court cannot locate at the record cite that Mr. Flute provided evidence that supports that contention.  Because Mr. Flute signed the "Plaintiff's Position" document and had the document notarized, and because the notary indicated that Mr. Flute was under oath, the Court credits Mr. Flute's description of his conversation with Mr. Bailey about Mr. Bailey's probation status.  The Court will treat the "Plaintiff's Position" document as an affidavit because Mr. Flute provided the information in the document under oath.

Shortly afterward, Chris Norman replaced Mr. Morgan as Ms. Brown's direct supervisor. (Doc. 44-14, pp. 8–9, ¶ 30). Mr. Norman asked to see the materials Ms. McKay-Smith had gathered during her investigation of the Bailey matter. (Doc. 44-14, p. 8, ¶ 30).

In August of 2018, Mr. Norman instructed Ms. McKay-Smith to investigate further and to "go back and review all of the information from all phases of the investigation again and to carefully review the possible policy violations implicated by Flute's conduct." (Doc. 44-14, p. 10, ¶¶ 32–33). Mr. Norman asked Ms. McKay-Smith and Ms. Brown to submit updated recommendations on discipline and justifications for their recommendations. (Doc. 44-5, p. 7, ¶ 24; Doc. 44-14, p. 9, ¶¶ 32–33).

In the meantime, in July of 2018, the Board needed to fill several vacancies including a Senior Probation and Parole Officer position in the Birmingham branch. (Doc. 44-5, p. 9, ¶ 36). The committee charged with interviewing, screening, and recommending promotions was composed of Ms. Brown, Ms. McKay-Smith, and Rebecca Bensema. (Doc. 44-5, p. 9, ¶ 36). Mr. Flute interviewed for the vacant position in July of 2018. (Doc. 44-1, p. 23, tpp. 83–84). Management did not fill the position then. The screening committee ranked Mr. Flute last among the candidates for the senior probation officer position based on the Bailey investigation. (Doc. 44-5, p. 10, ¶¶ 36–37).

In October of 2018, Ms. Brown, Ms. McKay-Smith, and Jeff Jeter conducted a second round of interviews for the senior probation officer position. (Doc. 44-5, p. 10, ¶¶ 37, 38). Mr. Flute interviewed again, but the committee did not select him. (Doc. 44-1, p. 23, tp. 84). The Board voted to promote an individual named Juan Vault, a Black male. (Doc. 44-5, pp. 10–11, ¶¶ 39–40; Doc. 54, p. 3; Doc. 44-2, p. 10).[2] Mr. Vault had not planned to interview for the position, but Ms. McKay-Smith instructed him to participate in the interviews. (Doc. 44-1, p. 23, tpp. 84–85). According to Ms. Brown, the committee did not recommend Mr. Flute for the position in October of 2018 because of the Bailey investigation. (Doc. 44-5, p. 10, ¶ 39).

In November of 2018, the investigation into Mr. Flute's conduct with Mr.

---

[2] In his brief in opposition to the Board's motion for summary judgment, Mr. Flute argues that Mr. Vault had less experience than him. (Doc. 54, p. 3). In his "Plaintiff's Position" affidavit, Mr. Flute asserts that his work as a probation officer "far exceeds" the work of other officers. (Doc. 48, p. 4, ¶ 23). In his deposition, Mr. Flute testified that when Mr. Vault received the promotion in 2018, Mr. Vault had worked for the Board for less than two years while he (Mr. Flute) had worked for the Board for approximately thirteen years. (Doc. 44-1, pp. 42–43, tpp. 161–62). The Court credits as support for Mr. Flute's argument that he had more experience than Mr. Vault Mr. Flute's testimony regarding his and Mr. Vault's tenures with the Board. *See generally*, *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012) ("While some testimony may be subject to credibility determinations, such credibility determinations are for the fact finder, which in this case is the jury. *Anderson*, 477 U.S. at 255, 106 S. Ct. 2505. Our case law recognizes that, even in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment."). In contrast, the Court does not credit Mr. Flute's broad, conclusory assertion in his position document/affidavit that his work is superior to the work of other officers. Mr. Flute has not identified the other officers, so his contention cannot be tested against objective criteria. Moreover, Mr. Flute's statement reflects a personal opinion that will not help the jurors assess the evidence in the case. Therefore, the Court disregards Mr. Flute's vague opinion testimony.

Bailey moved forward.  Mr. Norman submitted Ms. McKay-Smith's investigation

to his supervisors.  (Doc. 44-14, p. 9, ¶ 34).  In February of 2019, the Board approved

delivery of a charge letter to Mr. Flute.  Ms. McKay-Smith gave Mr. Flute the charge

letter on February 6, 2019.  (Doc. 44-14, p. 10, ¶ 36).  In the letter, the Board asserted

that Mr. Flute had violated personnel rules concerning conduct unbecoming of a

state employee by hiring Mr. Bailey while he was on probation under the supervision

of another officer, by engaging in a "personal/business relationship" with Mrs.

Bailey, and by using his position for personal gain by trying to get Mr. Bailey

released from jail so that Mr. Bailey could endorse a check that was in his and Mr.

Flute's names.  (Doc. 44-14, pp. 48-50).

On March 7, 2019, the Board held a hearing on the charge.  (Doc. 44-14, p.

10, ¶ 38).  Lee Ishman, a probation and parole manager, served as the hearing officer.

(Doc. 44-8, p. 2, ¶ 3).[3]  Based upon the testimony and exhibits presented during the

hearing, Mr. Ishman found that Mr. Flute violated state personnel rules by

fraternizing with an offender under supervision, (Doc. 44-4, pp. 101–04), and by

having a personal relationship with Mr. Bailey's wife, (Doc. 44-4, pp. 104–06).[4]  Mr.

---

[3] Mr. Ishman is a Black male.  (Doc. 44-8, p. 3, ¶ 5).

[4] With respect to the charge regarding fraternizing with an offender under supervision, Mr. Ishman found that Mr. Flute did not know that Mr. Bailey was on probation when Mr. Flute hired him to work on his roof, but Officer Brantley's testimony regarding phone calls with Mr. Flute concerning Mr. Bailey's supervision fees and a recorded phone call persuaded Mr. Ishman that Mr. Flute learned that Mr. Bailey was on probation weeks before he fired Mr. Bailey, and Mr. Flute did not notify his immediate supervisor to request permission for Mr. Bailey to continue performing roof

Ishman found that Mr. Flute had not used his official position for personal gain, so Mr. Ishman determined that Mr. Flute was not guilty of charge 3.  (Doc. 44-4, pp. 106–07).

Mr. Ishman forwarded a report of his findings to the executive director of the Board on March 18, 2019.  (Doc. 44-8, p. 4, ¶ 13).  On April 9, 2019, the Board approved a 30-calendar day suspension for Mr. Flute.  (Doc. 44-4, p. 108).  Mr. Flute served his suspension from April 22, 2019, until May 21, 2019.  (Doc. 44-1, p. 91, tp. 357).

On June 25, 2019, Mr. Flute filed a race and sex-based charge of discrimination with the EEOC.  (Doc. 44-2, pp. 2–3).  In it, Mr. Flute asserted that he was suspended in 2019 for conduct that allegedly occurred in 2017 and that before he was suspended, he "had complained that the blacks were being treated differently from the whites."  (Doc. 44-2, p. 2).  He added that "District Manager Krisi McCay (white female) [would] not allow [him] to be promoted because [he is] a black male, and [he] complained about whites being treated better than the blacks."  (Doc. 44-2, p. 2).

In October of 2019, Jameel E. Rucker, a Senior Probation and Parole Officer

---

repairs.  (Doc. 44-4, p. 103; *see also* Doc. 44-4, p. 84).

With respect to the charge regarding Mr. Flute's relationship with Mr. Bailey's wife, Mr. Ishman found that while Mr. Bailey was in jail, Mr. Flute contacted Mrs. Bailey to ask her to obtain Mr. Bailey's power of attorney to endorse a check made out to Mr. Flute and Mr. Bailey.  Mr. Ishman explained that an audio recording supported his finding.  (Doc. 44-4, p. 106).

who is a Black male, evaluated Mr. Flute's annual performance.  (Doc. 44-13, pp.

3-4, ¶¶ 4, 16).  Mr. Rucker scored Mr. Flute's overall performance based on 10 job

responsibilities by assigning a score between 0 and 4 for each responsibility.  A score

of 4 means the employee "Consistently Exceeds Standards," a score of 3 means that

an employee "Exceeds Standards," and a score of 1 means the employee "Partially

Meets Standards."  (Doc. 44-2, pp. 36-37; Doc. 44-13, p. 5, ¶ 18).  Mr. Rucker gave

Mr. Flute 4s for four job responsibilities and 3s for five job responsibilities.  Mr.

Rucker gave Mr. Flute a 1 for his work collecting supervision fees from offenders.

(Doc. 44-7, p. 20; Doc. 44-13, p. 5, ¶ 18).  Mr. Flute's total responsibility score was

32.  (Doc. 44-7, p. 20).

Under State Personnel Board Rules, an employee's yearly performance

appraisal must include the employee's disciplinary record for the year.  (Doc. 44-13,

p. 4, ¶ 17).   Suspensions produce an automatic 17-point deduction from an

employee's overall responsibility performance score for the year the suspension

occurred.  (Doc. 44-13, p. 4, ¶ 17); (Doc. 44-7, pp. 3–4, ¶ 5; p. 20).  Because Mr.

Flute served his suspension in 2019, Mr. Rucker deducted 17 points from Mr. Flute's

2019 responsibility score.  (Doc. 44-7, p. 19; *see also* Doc. 44-7, p. 4, ¶ 5).  As a

result, Mr. Flute's final performance appraisal score in 2019 was 15.  (Doc. 44-7, p.

19).  A score of 15 places an employee in the "partially meets standards" category.

(Doc. 44-7, p. 19).  Based on his score of 15, Mr. Flute was not eligible for a raise

in 2019 because only employees who have a performance appraisal score of 16.7 or higher are eligible for merit raises.  (Doc. 44-7, p. 3, ¶ 4; Doc. 44-7, p. 19).

## III.

### *Unlawful Discrimination*

Mr. Flute brings his race and sex discrimination claims under Title VII of the Civil Rights Act of 1964.[5]  To evaluate claims for unlawful discrimination by employers, courts may apply a three-step burden-shifting test.  "To succeed under this framework, a plaintiff must first present enough evidence to establish a prima facie case of discrimination; the employer then has the burden of production to articulate legitimate, nondiscriminatory reasons for the adverse employment action; and then the plaintiff must prove that those reasons were pretext."  *Sprowl v. Mercedes-Benz U.S. Int'l, Inc*., 815 Fed. Appx. 473, 479 (11th Cir. 2020) (citing *E.E.O.C. v. Joe's Stone Crabs, Inc*., 296 F.3d 1265, 1272 (11th Cir. 2002)).

To establish a prima facie case under step one of the burden-shifting test, Mr. Flute must show "(1) that [he] belongs to a protected class, (2) that [he] was

---

[5] Title VII race discrimination claims are either mixed-motive or single-motive claims.  *Quigg v. Thomas Cnty. Sch. Dist*., 814 F.3d 1227, 1235 (11th Cir. 2016).  Mr. Flute's race discrimination claim is a single-motive claim, meaning that the employer's stated reason for an adverse action was pretext for discriminatory intent, and discriminatory intent caused the adverse action; discriminatory intent was not just a motivating factor. *Quigg*, 814 F.3d at 1235.  In his complaint, Mr. Flute alleges that the adverse employment actions taken against him were "pretext" for race and sex discrimination.  (Doc. 28, p. 3, ¶ 13; p. 4, ¶ 24; p. 5, ¶ 26).  Additionally, in his opposition to the Board's motion for summary judgment, Mr. Flute follows the legal analysis for single-motive race discrimination claims.  (Doc. 54, p. 12).

subjected to an adverse employment action, (3) that [he] was qualified to perform the job in question, and (4) that h[is] employer treated 'similarly situated' employees outside h[is] class more favorably." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220–21 (11th Cir. 2019).   The Board does not challenge the first three elements of Mr. Flute's prima facia case.   Therefore, the Court regards those elements as established for purposes of this discussion.

To satisfy the last element of his prima facie case, Mr. Flute must show that he was treated less favorably than similarly situated employees.   Employees similarly situated to Mr. Flute are those who are "similarly situated in all material respects." *Lewis*, 918 F.3d at 1224.   Ordinarily, a similarly situated comparator "will have engaged in the same basic conduct (or misconduct) as the plaintiff," "will have been subject to the same employment policy, guideline, or rule as the plaintiff," "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff," and "will share the plaintiff's employment or disciplinary history." *Lewis*, 918 F.3d at 1227–28 (citations omitted).   Mr. Flute has identified Darryl Morgan and Amy McDill as two similarly situated comparators who the Board treated more favorably than him.   (Doc. 28, pp. 3–4; Doc. 44-1, pp. 36–37, tpp. 137–38; p. 40, tpp. 150–53).

Mr. Flute argues that the Board did not discipline Mr. Morgan, a white male employee of the Board who allegedly had lease contracts with probationers.   (Doc.

44-1, pp. 36–37; tpp. 136–41; Doc. 28, p. 3, ¶ 10). Mr. Flute testified that he heard that while Mr. Morgan was a district manager, a probationer was living in an apartment that Mr. Morgan owned or co-owned and that Mr. Morgan did maintenance on the apartment. (Doc. 44-1, p. 37, tpp. 138-40). Mr. Flute could not remember how he heard the information and did not take steps to corroborate the information. (Doc. 44-1, p. 37, tp. 138). Therefore, it is unlikely that Mr. Flute could make this hearsay evidence admissible for purposes of trial. Additionally, Mr. Morgan and Mr. Flute did not have the same supervisor, and Mr. Flute does not know if Mr. Morgan's supervisors knew about the alleged lessor/lessee relationship. (Doc. 44-1, p. 37, tp. 139). Mr. Flute has not provided information about Mr. Morgan's disciplinary history or performance appraisals. (Doc. 44-1, p. 37, tp. 141). Without more information about Mr. Morgan's alleged misconduct and disciplinary history and the Board's knowledge of Mr. Morgan's alleged misconduct, Mr. Morgan is not a viable comparator for Mr. Flute's race discrimination claim.

Mr. Flute's evidence regarding Amy McDill, a white female employee of the Board, also is insufficient. Mr. Flute contends that Ms. McDill was promoted even though she entered unearned time on a fellow employee's timecard. (Doc. 54, p. 15). That alleged conduct is not like the conduct for which the Board cited Mr. Flute. Mr. Flute does not know what position Ms. McDill had when she was disciplined,

and Mr. Flute does not know who supervised her. (Doc. 44-1, p. 40, tpp. 151-52).[6]

Thus, Mr. Flute has not carried his burden of showing that Ms. McDill is similarly

situated to him in all material respects.

Accordingly, Mr. Flute has not carried his burden of showing that he was

treated less favorably than similarly situated employees for his race and sex-based

discrimination claims. Because Mr. Flute has not established the elements of a prima

facie case under the *McDonnell Douglas* burden-shifting test, Mr. Flute's

discrimination claims fail under that test.

"Aside from the *McDonnell Douglas* framework, an employee can still

survive summary judgment by presenting 'circumstantial evidence that creates a

triable issue concerning the employer's discriminatory intent.'" *Jenkins v. Nell*, 26

F.4th 1243, 1250 (11th Cir. 2022) (quoting *Smith v. Lockheed–Martin*, 644 F.3d

1321, 1328 (11th Cir. 2011)). "Accordingly, [Mr. Flute's] failure to produce a

comparator does not necessarily doom [his] case." *Lockheed-Martin Corp.*, 644 at

1328. A triable issue of fact exists if the record, viewed in the light most favorable

to Mr. Flute, presents "'a convincing mosaic of circumstantial evidence that would

allow a jury to infer intentional discrimination by the decisionmaker.'" *Lockheed-*

*Martin Corp.*, 644 F.3d at 1328 (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729,

---

[6] The Board has stated that it dismissed Ms. McDill and later reinstated her to her pre-dismissal job classification following an appeal. The Board did not give Ms. McDill backpay for the period between her dismissal and her reinstatement. (Doc. 44-7, p. 6, ¶¶ 14–16).

734 (7th Cir. 2011)).

Mr. Flute argues that the disciplinary charges against him were unfounded and were motivated by discriminatory intent, as evidenced by the fact that the Board waited nearly two years to charge him for his business transaction with Mr. Bailey. On the record in this case, the evidence does not support an inference that the Board delayed its investigation to sabotage Mr. Flute's ability to get a promotion, and absent evidence of a flawed process, Mr. Flute cannot rest a discrimination charge on his disagreement with the hearing officer's findings.

Generally, attacks on findings from administrative proceedings will not suffice to prove discriminatory intent. The Eleventh Circuit has explained that a district court may not second-guess those findings absent evidence that the administrative proceeding or the underlying investigation was not conducted properly. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("Much of Elrod's proof [] centered around whether Elrod was in fact guilty of the [] allegations leveled at him by his former co-workers . . . . Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [we] do[] not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.") (citation omitted); *see also Gogel v. Kia Motors Mfg. of Georgia,*

*Inc.*, 967 F.3d 1121, 1149 (11th Cir. 2020) (same).  In his summary judgment brief, Mr. Flute acknowledged that at his employment hearing, he "was given the opportunity to present witnesses [and] evidence, and to cross-examine witnesses." (Doc. 54, p. 5).  Therefore, Mr. Flute does not appear to challenge the hearing procedure.[7]

In his deposition, Mr. Flute testified that a provision in the Board's 2009 personnel manual required the Board to handle employee misconduct within seven to ten days, and Mr. Flute asserted that the Board waited until he applied for a promotion to pursue charges against him for conduct that occurred in 2017.  (Doc. 44-1, p. 28, tp. 102).  The Board's 2009 policy manual states that when taking disciplinary action, a "responsible supervisor (or investigator) [should] prepare a written statement of charge" and that a supervisor must:

> handle charge letters in an expeditious manner (going both up and down the supervisory chain), and not cause undue delay.  In the event exigent circumstances prevent a supervisor within that chain of command (or a supervisor who is acting in his/her stead while absent) from being available for an extended period such that he/she can not [*sic*] review and forward the action in an expeditious manner, that level of the chain of command may be skipped and the action forwarded on to the next level.

(Doc. 44-5, pp. 15-16).  Viewing the evidence in the light most favorable to Mr.

---

[7] Mr. Flute does not challenge Mr. Ishman's finding that the Board did not prove the third charge against him; Mr. Flute criticizes Mr. Ishman's conclusions only with respect to the first and second charges against him.

Flute, his supervisors did not handle his charge expeditiously. Rather, the Board investigated Mr. Bailey's charges against Mr. Flute for nearly two years before issuing a charge letter.

Still, the evidence does not indicate that the Board delayed its investigation because of Mr. Flute's race or gender to prevent him from obtaining a promotion. The Board had spent nearly one year investigating Mr. Bailey's charges before the Board posted a vacancy for a Senior Probation and Parole Officer position in the Birmingham branch, the position for which Mr. Flute applied. (Doc. 44-5, p. 9, ¶ 36). There is no evidence that the Board employees involved in the investigation knew that a vacancy was forthcoming and delayed bringing a formal charge to disqualify Mr. Flute from the promotion. There is no evidence that suggests that if the Board had completed its investigation sooner, a hearing officer would have found Mr. Bailey not guilty of charges one and two; the basic facts relating to the charges were largely undisputed.[8] And Mr. Vault, the person who the Board selected to fill the vacancy, is a Black male, undermining Mr. Flute's contention that his race or his gender motivated the Board's decision to offer the promotion to a candidate other

---

[8] In his brief in opposition to the Board's summary judgment motion, Mr. Flute "admitted that he hired [Mr.] Bailey to work on his roof in the month of February 2017" and that Mr. Bailey worked for him "through April 2017." (Doc. 54, p. 4). Mr. Flute also acknowledged that he "cashed two checks payable to [Mr. Bailey] while [Mr. Bailey] was in jail, by getting [Mr. Bailey's] wife to sign [Mr. Bailey's] name" to endorse the checks. (Doc. 54, p. 4).

than him.[9]

Because Mr. Flute has not presented direct or circumstantial evidence to support his contention that the Board's decision to discipline him, which cost him a promotion and a raise, was motivated by his race or his gender, his discrimination claims against the Board fail as a matter of law. Though a reasonable jury could conclude that the investigation and charge letter were not handled expeditiously, Mr. Flute has not presented evidence that the Board's investigation was less than thorough, that the investigation was conducted improperly, or that the investigation began or was prolonged because of his race or gender. Therefore, the Court will grant the Board's motion for summary judgment on Mr. Flute's discrimination claims.

---

[9] Mr. Flute argues that he "should have been promoted before [Mr.] Vault because he was more qualified and had more experience." (Doc. 54, p. 16). Though "[h]iring a less qualified person can support an inference of discriminatory motivation," *Bass v. Bd. of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1107 (11th Cir. 2001), a distinction in qualifications usually is meaningful only if the candidates differ in their protected characteristics. For example, in *Bass*, the Black candidate the defendant selected for a training instructor position "did not even meet the minimum qualifications for the position," while the plaintiff, a white male, had experience as a training instructor and "was an excellent employee who constantly received good or outstanding evaluations." 256 F.3d at 1098, 1100. The plaintiff's evidence that he was better qualified for the instructor position than the Black candidate "constituted circumstantial evidence that the [defendant] was acting with race in mind when selecting Training Instructors . . . ." 256 F.3d at 1109. Even if Mr. Flute had more experience than Mr. Vault because he (Mr. Flute) had worked at the Board longer, (Doc. 44-1, pp. 42–43, tpp. 161–62), and even if that evidence of tenure could prove that Mr. Flute, overall, was better qualified than Mr. Vault to serve as a senior probation officer, Mr. Flute has not demonstrated that the Board selected Mr. Vault rather than him because of his race or his gender.

### *Retaliation*

In his complaint, Mr. Flute alleges that the Board denied him a promotion and instead promoted a less-qualified individual because before the Board posted the vacant position for which Mr. Flute applied, he "complained to his supervisors that African American male employees were treated less favorably than Caucasian and female employees."  (Doc. 28, p. 4, ¶¶ 21–23).  In his opposition to the Board's summary judgment motion, Mr. Flute mentions retaliation only in passing.  He argues that a less qualified co-employee "was promoted over him," (Doc. 54, pp. 15-16), but he does not tie his unsuccessful bid for the promotion to the decision-maker's knowledge of internal complaints that he made regarding the inferior treatment of Black male employees.  To the extent that he pursues his retaliation claims, Mr. Flute relies on the evidence that he cites in support of his discrimination claim.

To make an initial showing of retaliation under Title VII, a plaintiff must demonstrate that he engaged in statutorily protected conduct, that he suffered adverse employment action, and that "the adverse action was causally related to the protected activity."  *Gogel*, 967 F.3d at 1134 (quotation marks and citation omitted). Protected activity is activity in opposition to discriminatory conduct or participation in an EEOC proceeding.  *E.E.O.C. v. Total Sys, Srv., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).  If a plaintiff makes an initial showing, then the burden of production

"shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for the employment action.  If the employer produces such a reason, the presumption is rebutted, and the plaintiff must then demonstrate that the 'proffered reason was merely a pretext to mask [retaliatory] actions.'"  *Gogel*, 967 F.3d at 1135 (quoting *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009)).

The Court will assume that Mr. Flute can make an initial showing, causing the burden of production to shift to the Board.  The Board has explained that it did not promote Mr. Flute in October 2018 and disciplined him in 2019 because Mr. Flute's relationship with Mr. Bailey and Mr. Bailey's wife and stepson violated agency policy.  (Doc. 45, pp. 24–25; Doc. 57, pp. 6–11).  This explanation is adequate to rebut the initial presumption that the Board did not promote Mr. Flute and, instead, suspended him to retaliate against him for protected conduct.

Therefore, to avoid summary judgment, Mr. Flute must demonstrate that the Board's proffered reasons for its decisions were merely pretext and that but for Mr. Flute's complaints about the Board's treatment of Black male employees, the adverse employment actions would not have occurred.  *Gogel*, 967 F.3d at 1135. Mr. Flute must meet the reasons stated by the Board "head on" and rebut them. *Chapman v. AI Transp*., 229 F.3d 1012, 1030 (11th Cir. 2000).  To establish pretext, Mr. Flute must demonstrate such "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [Board's] proffered legitimate reasons for its

action that a reasonable factfinder could find them unworthy of credence.'" *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).  To be pretextual, the Board's proffered reasons must be false.  *Gogel*, 967 F.3d at 1136.

Based on the above discussion of the evidence, Mr. Flute has not shown such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the Board's stated reason.  Because Mr. Flute has not demonstrated that the Board's stated reasons for the adverse employment actions against him were pretextual, Mr. Flute's retaliation claim fails as a matter of law.

## IV.

For the reasons discussed above, the Court grants the Board's motion for summary judgment.  By separate order, the Court will enter judgment for the Board on Mr. Flute's claims.

**DONE** and **ORDERED** this April 12, 2023.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE